Cause No. 3:09-CV-100
ECF

---

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

---

ODES HO KIM,

*Appellant,*

v.

DOME ENTERTAINMENT CENTER, INC.,

*Appellee.*

---

Appeal from the United States Bankruptcy Court
For the Northern District of Texas, Dallas Division
Case No. 07-36293-HDH

---

**BRIEF FOR THE APPELLANT,
ODES HO KIM**

---

Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
PRONSKE & PATEL, P.C.
1700 Pacific Avenue, Suite 2260
Dallas, Texas 75201

Telephone:  (214) 658-6500
Facsimile:  (214) 658-6509

**ATTORNEYS FOR THE APPELLANT**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that the judge of this Court may evaluate possible disqualification or recusal.

**A.     Parties:**

Appellant:                    Odes Ho Kim

Appellee:                     Dome Entertainment Center, Inc.

Interested Party:             Chong Ann Kim

**B.     Attorneys:**

Appellant:                    Gerrit M. Pronske
                              Rakhee V. Patel
                              Pronske & Patel, P.C.
                              1700 Pacific Ave., Suite 2260
                              Dallas, Texas 75201
                              (214) 658-6500


Appellee:                     Howard M. Spector
                              Nathan M. Johnson
                              Howard Marc Spector, P.C.
                              12770 Coit Road
                              Banner Place, Suite 1100
                              Dallas, Texas 75251
                              (214) 365-5377

Interested Party:             Monica S. Blacker
                              Andrews Kurth LLP
                              1717 Main Street, Suite 3700
                              Dallas, Texas 75201
                              (214) 659-4576

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................................ii

TABLE OF CONTENTS...........................................................................................................iii

TABLE OF AUTHORITIES .....................................................................................................iv

STATEMENT OF ISSUES ........................................................................................................ 1

STATEMENT OF THE CASE....................................................................................................2

STATEMENT OF FACTS ..........................................................................................................3

SUMMARY OF THE ARGUMENT ..........................................................................................5

STANDARD OF REVIEW .........................................................................................................6

ARGUMENT AND AUTHORITIES .........................................................................................7

CONCLUSION.......................................................................................................................... 18

PRAYER.................................................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98 (1954) .................................................................. 11

*Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 469-470, 102 L.Ed.2d
    493 (1988) ........................................................................................................................ 13

*Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502 (5th Cir. 1992) ..................... 8

*Cadle Co. v. Ortiz*, 227 S.W.3d 831, 835 (Tex.App. –Corpus Christi 2007) .............................. 8

*Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798)......................................................................... 14

*Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 98
    (Bankr. E.D. N.Y. 1991) .............................................................................................. 10, 11

*Dolan v. City of Tigard,* 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) ............. 13

*Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131 (1998).................................... 14, 16

*Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825 (1991) ........................................................ 7

*Florey v. Estate of McConnell*, 212 S.W.3d 439, 443 (Tex.App. –Austin 2006, pet. denied) ..... 8

*Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992) .............................................................. 8

*Immigration and Naturalization Service v. Enrico St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271
    (2001)............................................................................................................................... 15

*In re Blair*, 334 B.R. 374, 375-376 (Bankr. N.D. Tex. 2005)................................................ 9, 10

*In re Cole*, 205 B.R. 382, 384 (Bankr. E.D. Tex. 1997)............................................................... 8

*In re England,* 975 F.2d 1168, 1172 (5th Cir.1992) .................................................................... 6

*In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986)............................................ 7

*Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979);....... 13

*Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586-
    1587, 108 L.Ed.2d 842 (1990)........................................................................................ 13

*Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229

(1994) .................................................................................................................... 14

*Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350 (1961) ............... 7

*Lingle v. Chevron*, 544 U.S. 528, 536, 125 S.Ct. 2074 (2005) ...................................... 11, 12, 13

*Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d

868 (1982) .................................................................................................... 11, 13

*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593

(1935) ............................................................................................................. 10, 16

*Lucas v. South Carolina Coastal Council* ................................................................ 11

Majeski v. Estate of Majeski, 163 S.W.3d 102, 107 (Tex.App. –Austin 2005) .......................... 8

*Martin v. Hadix,* 527 U.S. 343, 357-358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) .................. 15

*Nollan v. California Coastal Comm'n,* 483 U.S. 825, 831-832, 107 S.Ct. 3141, 97 L.Ed.2d 677

(1987) ................................................................................................................ 13

*Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833 (1991) .................................................. 9

*Painewebber Inc. v. Murray*, 260 B.R. 815 (E.D. Tex. 2001) ...................................... 8

*Palazzolo v. Rhode Island,* 533 U.S. 606, 617-618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) .. 12

*Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631

(1978) ........................................................................................................... 12, 13

*PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), 13

*Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962) .................................................. 7

*Republic of Austria v. Altmann* ........................................................................ 14

*Republic of Austria v. Altmann*, 541 U.S. 677, 124 S.Ct. 2240 (2004) ............................. 15

*United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132 (1983) ............................ 8

*United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407 (1982) .......................... 11

*Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village Properties, Ltd.)*, 723

    F.2d 441 (5th Cir. 1984) ...................................................................................................... 7

*Woods v. Alvarado State Bank*, 19 S.W.2d 35, 35 (Tex. 1929) .................................................. 8

**Statutes**

11 U.S.C. § 522 ............................................................................................................... 10, 11

11 U.S.C. § 541 ..................................................................................................................... 10

28 U.S.C. § 158 ....................................................................................................................... 7

V.T.C.A., Property Code § 41.001 .......................................................................................... 8

**Other Authorities**

HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 WL 832198 *15-16 (2005), 2005 U.S.

    Code Cong. & Admin. News 2005, pp.88, 102 ................................................................. 11

**Constitutional Provisions**

Vernon's Ann. Texas Const. Art. 16, § 50 ................................................................................. 8

## STATEMENT OF THE ISSUES

1.      The Bankruptcy Court erred in sustaining Dome Entertainment Center, Inc.'s Objection to Debtor's Claim of Exemptions.

2.      The Bankruptcy Court erred in holding that the Debtor's claim of exemption as to the real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038 (the "Property") is limited to an interest in such Property not to exceed $136,875.

3.      The Bankruptcy Court erred in overruling the Debtor's challenge to the constitutionality or applicability of 11 U.S.C. § 522(p) to this case with respect to the Property.

## STATEMENT OF THE CASE

Nature of the Case:          On or about December 28, 2007, Dome Entertainment Center, Inc. ("Dome") filed a signed involuntary bankruptcy petition against Odes Ho Kim (the "Debtor") (Case No. 07-36293-HDH) (R.1:120-121). On or about May 9, 2008, the Bankruptcy Court entered an Order granting Debtor's Motion to Convert Case from Chapter 7 to Chapter 11. Debtor filed his schedules on or about June 10, 2008 (R. 1:113). The section 341 Meeting of Creditors was held on June 16, 2008 (R. 1:113). On or about June 18, 2008, Dome filed its Objection to Debtor's Claim of Exemptions (R. 1:113). After a hearing the Bankruptcy Court entered an Order sustaining Dome's Objection to Debtor's Claim of Exemptions (R. 1:258-259). On October 27, 2008, the Debtor filed a Notice of Appeal of the Bankruptcy Court's Order dated October 17, 2008 (R. 1:1).

Trial Court:          Bankruptcy Court, Northern District of Texas, Dallas Division, the Honorable Harlin D. Hale presiding.

Trial Court's Disposition:          The Bankruptcy Court entered an Order Regarding Debtor's Claims of Exemptions (the "Order") limiting Debtor's claim of exemption as to the real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038 (the "Property") is limited to an interest in such Property not to exceed $136,875.00. The Order also held that Debtor's challenge to the constitutionality or applicability of 11 U.S.C. § 522(p) to this case with respect to the Property is overruled (R. 1:258-259).

        The record consists of one volume, plus one mini-volume to the judge. Volume one is cited as (R. 1:Page).

## STATEMENT OF FACTS RELEVANT
## TO THE ISSUES SUBMITTED FOR REVIEW

*The Dome Litigation*

Dome Entertainment Center, Inc. ("Dome") began constructing an entertainment/retail complex on Sunset Boulevard in Hollywood in 2000.  Dome began negotiating with Mr. Odes Ho Kim ("Mr. Kim" or the "Debtor") in 2002, shortly before the complex was scheduled to open.  Mr. Kim is Korean and though he speaks and writes limited English, he has difficulty understanding more complicated English, such as business or legal communications.  After a series of rushed negotiations, Mr. Kim signed a proposed lease package with specific options.  However, Dome substituted an exhibit of the package that included material terms without Mr. Kim's authorization before sending the package to its lender for approval.

Problems ensued with the business dealings and in July 2002, Mr. Kim's attorney filed a lawsuit on Mr. Kim's behalf against Dome for breach of contract and misrepresentation, mistakenly attaching the lease package with the unauthorized substituted exhibit.  Dome sued Mr. Kim in November 2002 for unlawful detainer, attaching the unauthorized lease package.  Mr. Kim's attorney was unaware that the unauthorized substitution had been made.   In February 2003, the unlawful detainer suit was converted into an ordinary civil action.

In May 2004, Dome produced documents disclosing the intentional substitution of the pertinent exhibit.  Nevertheless, the trial court granted Dome's Motion for Judgment on the Pleadings and barred Mr. Kim from claiming the lease package was unenforceable. A jury trial was held wherein Mr. Kim was precluded from putting on exculpatory evidence and the jury found that Mr. Kim owed $3,765,569 in damages. The court entered judgment on November 9, 2006.  Mr. Kim appealed the judgment and all orders made final by it.  In April 2007, Dome moved for attorneys' fees and costs based on a fee provision in the lease package.  On June 21,

3

2007, the court awarded Dome $1,872,453 in attorneys' fees and costs. Mr. Kim timely appealed that order on July 23, 2007. The appeals are currently under consideration in the Court of Appeal of the State of California, Second Appellate District, Division Eight. *See generally*, R. 1:163-167 and *Transcript of Hearing on Involuntary Petition and Motion to Suspend*, Docket No. 107, partially produced at R. 1:80-87.

*Mr. Kim's Homestead*

Mr. Kim and his wife signed a New Home Contract, dated June 14, 2004, in the amount of $1,108,750.00. The Final Settlement Statement was signed on August 24, 2004. Funds paid for the house totaled $1,048,028.36 (R. 1:68). On September 2, 2004, a Warranty Deed was signed for 2013 Cottonwood Valley Circle, Irving, TX 75038 (the "Property") (R. 1:40). Mr. Kim and his wife live at the Property, and claim it as their homestead (R. 1:186).

*The Involuntary Bankruptcy*

On or about December 21, 2007, Dome filed an unsigned involuntary bankruptcy petition against the Debtor (R. 1:106). On or about December 28, 2007, Dome filed, for the first time, a signed involuntary bankruptcy petition against the Debtor (R. 1:1200121). The Court, after a hearing held April 21, 2008, entered an Order for Relief with Notice of Deficiency on April 23, 2008 (R. 1:122-123). On or about June 18, 2008, Dome filed its Objection to Debtor's Claim of Exemptions ("Dome's Objection") (R. 1:113). The Court, after a hearing held September 29, 2008, entered an Order Regarding Debtor's Claims of Exemptions (the "Order") (R. 1:258-259), limiting Debtor's claim of exemption as to the real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038 and overruling Debtor's challenge to the constitutionality or applicability of 11 U.S.C. § 522(p) to the bankruptcy case with respect to the Property (R. 1:258-259).

4

## SUMMARY OF THE ARGUMENT

Congress' power to make uniform bankruptcy laws is subject to the Fifth Amendment's prohibition against taking private property without compensation. To the extent that section 522(p) applies to eviscerate Debtor's homestead rights, the statute performs, through the court's Order Sustaining Dome's Objection to Debtor's Claim of Exemptions (the "Order"), an unconstitutional taking without compensation.

Not only is the application of Section 522(p) of the Bankruptcy Code in this case an unconstitutional taking pursuant to the Fifth Amendment, it also appears to have a retroactive application in this case, having a severe impact upon interests acquired by the Debtor prior to the enactment of BAPCPA. Retroactive legislation is generally disfavored in the law. Particularly concerning to courts are new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.

Dome is a mere judgment creditor of Debtor. In what was nothing more than a brazen attempt to circumvent Texas Constitutional protections, Dome sought bankruptcy for the Debtor. Dome's sole goal is to achieve through bankruptcy what it cannot achieve in any other court in the State of Texas – to enforce its judgment against the Debtor's protected homestead. The Texas Constitution's homestead provisions were specifically designed to prevent just this result – the forced sale of Debtor's home. The retroactive and unconstitutional effect of section 522(p) allows for just such an injustice. Thus, for the reasons stated above, section 522(p) should be found unconstitutional under the Fifth Amendment Takings Clause.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*), 125 F.3d 292, 295 (5th Cir. 1997).  The bankruptcy court's legal conclusions are always subject to *de novo* review. *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 (5th Cir. 1994); *In re Fussel*, 928 F.2d 712, 715 (5th Cir. 1991).  "De novo" review requires the Court "to make a judgment independent of the bankruptcy court's without deference to that court's analysis and conclusions." *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler),* 106 B.R. 943, 952 (N.D. Tex 1989)(Fish, J.) When a bankruptcy court premises a finding of fact upon an improper legal standard, that finding "loses the insulation of the clearly erroneous rule."  *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1464 (5th Cir. 1991). The Court must give *de novo* review to mixed questions of law and fact. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 600 (5th Cir. 1994).

District courts' jurisdiction to hear appeals in bankruptcy cases encompasses final judgments, orders, and decrees, as well as certain interlocutory orders and decrees. 28 U.S.C. § 158(a). An order that grants or denies an exemption is deemed a final order for the purpose of 28 U.S.C. § 158.  *In re England,* 975 F.2d 1168, 1172 (5th Cir.1992). Determination whether an exemption from the bankruptcy estate exists is a question of law, which is reviewed *de novo. Id.*

## ARGUMENT AND AUTHORITIES

**Authorities**

### I.      TEXAS HOMESTEAD LAW

Property interests and estates are to be dealt with in the bankruptcy courts in such a manner as to give full respect to the property rules followed in the state where the property is located. *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962). *See also Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825 (1991). As stated by the Supreme Court in *Butner*,

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

*Butner* at 55, citing *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350 (1961). *See also In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) (the extent of the debtor's estate is generally defined by nonbankruptcy law, typically state law); *Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village Properties, Ltd.)*, 723 F.2d 441 (5th Cir. 1984) (state created property rights, in a bankruptcy context, will not be destroyed by implication).

Homestead exemptions in Texas have their origins in both constitutional and statutory provisions. Vernon's Ann. Texas Const. Art. 16, § 50; V.T.C.A., Property Code § 41.001. The Texas Constitution provides special protections for homestead property beyond the protections given to other types of property. *Id.* A homestead is a constitutionally created legal interest that protects a property from all but a few specifically enumerated kinds of liens that may be

7

imposed against a homestead. *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992); Majeski v. Estate of Majeski, 163 S.W.3d 102, 107 (Tex.App. –Austin 2005).

Homestead rights have traditionally enjoyed great protection in Texas jurisprudence. *Florey v. Estate of McConnell*, 212 S.W.3d 439, 443 (Tex.App. –Austin 2006, pet. denied); *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 835 (Tex.App. –Corpus Christi 2007). When interpreting provisions of Texas homestead exemptions, a court must liberally construe them to protect the homestead. *Painewebber Inc. v. Murray*, 260 B.R. 815 (E.D. Tex. 2001); *In re Cole*, 205 B.R. 382, 384 (Bankr. E.D. Tex. 1997); *Woods v. Alvarado State Bank*, 19 S.W.2d 35, 35 (Tex. 1929). In fact, courts must uphold and enforce the Texas homestead laws even though, in so doing, the court might unwittingly assist a debtor in wrongfully defeating his creditor. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502 (5th Cir. 1992) (quoting *Cocke v. Conquest*, 35 S.W.2d 673 (1931)).

The United States Supreme Court noted in *Rodgers*, "[t]he Texas homestead right is not a mere statutory entitlement, but a vested property right. As the Supreme Court of Texas has put it, a spouse 'has a vested estate in the land of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.'" (internal citations omitted) *United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132 (1983). Moreover, a homestead estate is treated in Texas as property for which just compensation or its equivalent must be paid in case of condemnation by the state. *Id.*

## II.       SECTION 522(p) OF THE UNITED STATES BANKRUPTCY CODE

Section 541 of the Bankruptcy Code defines the bankruptcy estate in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or
> equitable interests of the debtor in property as of the commencement of the case.
> (2) All interests of the debtor and the debtor's spouse in community property as
> of the commencement of the case that is—
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liable for an allowable claim against the debtor, or for both an allowable
> claim against the debtor and an allowable claim against the debtor's spouse, to
> the extent that such interest is so liable.

11 U.S.C. § 541. An exemption is an interest withdrawn from the estate (and hence from the

creditors) for the benefit of the debtor. Section 522 determines what property a debtor may

exempt. *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833 (1991).

   Section 522 of the Bankruptcy Code allows debtors to choose between state or federal

exemptions to exempt property from the bankruptcy estate. *See generally*, 11 U.S.C. § 522; *In*

*re Blair*, 334 B.R. 374, 375-376 (Bankr. N.D. Tex. 2005). Most Debtors in Texas choose the

state exemptions because of Texas' unlimited homestead exemption. *Id.* at 376. The

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), signed into

law on April 20, 2005, made particular changes to section 522, most relevant here being section

522(p).

   Section 522(p) of the Bankruptcy Code became effective upon the enactment of

BAPCPA on April 20, 2005.[1]   The section holds in relevant part:

> (p)(1) Except as provided in paragraph (2) of this subsection and sections 544
> and 548, as a result of electing under subsection (b)(3)(A) to exempt property
> under State or local law, a debtor may not exempt any amount of interest that
> was acquired by the debtor during the 1215-day period preceding the date of the
> filing of the petition that exceeds in the aggregate $136,875 in value in--
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as
> a residence;
>
> (B) a cooperative that owns property that the debtor or a dependent of the debtor

---

[1] "The amendments made by sections 308, 322, and 330 shall apply with respect to cases commenced under title
11, United States Code, on or after the date of the enactment of this Act."  BAPCPA § 1501(b)(2). *Hill v. Hill*, 387
B.R. 339 (B.A.P. 1st Cir. 2008).

uses as a residence;

(C) a burial plot for the debtor or a dependent of the debtor; or

(D) real or personal property that the debtor or dependent of the debtor claims as
a homestead.

11 U.S.C. §522(p).

The purpose of section 522(p) "was to prevent out of state residents from moving to certain states in order to file for bankruptcy under more advantageous state home exemption laws." *In re Blair*, 334 B.R. 374 (Bankr. N.D. Tex. 2005). "The legislative comments state that the amended Section 522(p) restricts the "mansion loophole." HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 WL 832198 *15-16 (2005), 2005 U.S. Code Cong. & Admin. News 2005, pp.88, 102. Congress briefly explains: Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their mansion loophole laws. S. 256 [BAPCPA] closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim the state's homestead exemption." *Id.* at 377-378.

### III.   UNCONSTITUTIONAL   TAKING   PURSUANT   TO   THE   FIFTH   AMENDMENT

Congress' power to make uniform bankruptcy laws is subject to the Fifth Amendment's prohibition against taking private property without compensation. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 98 (Bankr. E.D. N.Y. 1991) ("there is almost universal agreement that the power given to Congress by the Bankruptcy clause may not overstep the limitations imposed by the Due Process and Takings

Clauses of the Fifth Amendment."). Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment. *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407 (1982).

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron*, 544 U.S. 528, 536, 125 S.Ct. 2074 (2005). "Although the Fifth Amendment speaks only of a taking of private property for a public use, it is settled law that private property could not be taken for other than public use even if just compensation were to be paid." *Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 99 (Bankr. E.D. N.Y. 1991).  Clearly, "one person's property may not be taken for the benefit of another person without justifying public purpose, even though compensation be paid." *Id.* quoting *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98 (1954).

Two categories of regulatory action will generally be deemed *per se* takings for Fifth Amendment purposes. First, where government requires an owner to suffer a permanent physical invasion of her property-however minor-it must provide just compensation. See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (emphasis in original). The Supreme Court held in *Lucas* that the government must pay just compensation for such "total regulatory takings," except to the extent that "background

principles of nuisance and property law" independently restrict the owner's intended use of the property. *Id.,* at 1026-1032, 112 S.Ct. 2886; *Lingle v. Chevron*, 544 U.S. 528, 536, 125 S.Ct. 2074 (2005).

Outside the categories described above, regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The *Penn Central* Court identified "several factors that have particular significance." *Id.,* at 124, 98 S.Ct. 2646. Primary among those factors are "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Ibid.* In addition, the "character of the governmental action"-for instance whether it amounts to a physical invasion or instead merely affects property interests through "some public program adjusting the benefits and burdens of economic life to promote the common good"-may be relevant in discerning whether a taking has occurred. *Ibid.* The *Penn Central* factors have served as the principal guidelines for resolving regulatory takings claims that do not fall within the physical takings or *Lucas* rules. See, *e.g., Palazzolo v. Rhode Island,* 533 U.S. 606, 617-618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001); *id.,* at 632-634, 121 S.Ct. 2448 (O'CONNOR, J., concurring); *Lingle v. Chevron*, 544 U.S. 528, 536, 125 S.Ct. 2074 (2005).

Each of the above inquiries aims to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain, focusing directly upon the severity of the burden that government imposes upon private property rights. The Supreme Court has held that physical takings require compensation because a permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using

her property-perhaps the most fundamental of all property interests. See *Dolan v. City of Tigard,* 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 831-832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Loretto, supra,* at 433, 102 S.Ct. 3164; *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *Lingle v. Chevron,* 544 U.S. 528, 536, 125 S.Ct. 2074 (2005).

Since the governmental action here (the operation of section 522(p)) would result in a almost complete destruction of the property right of the Debtor this case fits into the analytic framework employed in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) and *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), where governmental action affected some but not all of the "bundle of rights" which comprise the "property" in question.

## IV.     RETROACTIVE TAKING

Not only is the application of Section 522(p) of the Bankruptcy Code in this case an unconstitutional taking pursuant to the Fifth Amendment, it also appears to have a retroactive application, having a severe impact upon interests acquired by the Debtor prior to the enactment of BAPCPA.

Retroactivity is generally disfavored in the law, *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 469-470, 102 L.Ed.2d 493 (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586-1587, 108 L.Ed.2d 842 (1990) (SCALIA, J., concurring).[2] The United States Constitution expresses

---

[2] See also, *e.g., Dash v. Van Kleeck,* 7 Johns. 477, 503 (N.Y.1811) ("It is a principle in the *English* common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect"); H. Broom, Legal Maxims 24 (8th ed. 1911) ("Retrospective laws are, as a rule, of questionable policy, and contrary to the general principle that legislation by which the conduct of mankind is to be regulated ought to deal

concern about retroactive laws through several of its provisions, including the *Ex Post Facto* and Takings Clauses. *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). In *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798), this Court held that the *Ex Post Facto* Clause is directed at the retroactivity of penal legislation, while suggesting that the Takings Clause provides a similar safeguard against retrospective legislation concerning property rights. *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131 (1998).

In *Republic of Austria v. Altmann*, the Supreme Court examined the rationales that support the antiretroactivity presumption, noting, "[t]he Legislature's ... responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals," *Landgraf,* 511 U.S., at 266, 114 S.Ct. 1483, and that retroactive statutes may upset settled expectations by " 'tak [ing] away or impair[ing] vested rights acquired under existing laws, or creat [ing] a new obligation, impos[ing] a new duty, or attach[ing] a new disability, in respect to transactions or considerations already past,' " *id.,* at 269, 114 S.Ct. 1483 (quoting *Society for Propagation of the Gospel v. Wheeler,* 22 F. Cas. 756, 767 (No. 13,156) (CC NH 1814) (Story, J.)). The Court further observed that these antiretroactivity concerns are most pressing in cases involving "new

---

with future acts, and ought not to change the character of past transactions carried on upon the faith of the then existing law"). In his Commentaries on the Constitution, Justice Story reasoned: "Retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891). A similar principle abounds in the laws of other nations. See, *e.g., Gustavson Drilling (1964) Ltd. v. Minister of National Revenue,* 66 D.L.R.3d 449, 462 (Can. 1975) (discussing rule that statutes should not be construed in a manner that would impair existing property rights); The French Civil Code, Preliminary Title, Art. 2, p. 2 ("Legislation only provides for the future; it has no retroactive effect") (J. Crabb transl., rev. ed. 1995); Aarnio, Statutory Interpretation in Finland 151, in Interpreting Statutes: A Comparative Study (D. MacCormick & R. Summers eds. 1991) (discussing prohibition against retroactive legislation). "Retroactive legislation," we have explained, "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992).

provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." 511 U.S., at 271, 114 S.Ct. 1483; *Republic of Austria v. Altmann*, 541 U.S. 677, 124 S.Ct. 2240 (2004). Homestead law in Texas is one such matter in which predictability and stability are paramount.

The *Altman* Court's approach to retroactivity paralleled that advocated by Justice Scalia in his concurrence in *Landgraf:*

> "The critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs *after* the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore a different relevant retroactivity event." 511 U.S., at 291, 114 S.Ct. 1483 (opinion concurring in judgment).

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' " *Martin v. Hadix,* 527 U.S. 343, 357-358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), (quoting *Landgraf,* 511 U.S., at 270, 114 S.Ct. 1483). A statute has retroactive effect when it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past....' "*Id.,* at 269, 114 S.Ct. 1522 (quoting *Society for Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756, 767, No. 13,156 (C.C.D.N.H. 1814) (Story, J.)). *Immigration and Naturalization Service v. Enrico St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271 (2001).

In *Security Industrial Bank,* the Supreme Court considered a Takings Clause challenge to a Bankruptcy Code provision permitting debtors to avoid certain liens, possibly including those predating the statute's enactment. The Court therein expressed "substantial doubt whether

the retroactive destruction of the appellees' liens ... comport[ed] with the Fifth Amendment," and therefore construed the statute as applying only to lien interests vesting after the legislation took effect. Similar concerns led the Court to strike down a bankruptcy provision as an unconstitutional taking where it affected substantive rights acquired before the provision was adopted. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601-602, 55 S.Ct. 854, 868-869, 79 L.Ed. 1593 (1935); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131 (1998).

In *Louisville Joint Stock v. Radford*, the Supreme Court held that the Frazier-Lemke Act, June 28, 1934, c. 869, 48 Stat. 1289, violated the Takings Clause. The bank held a nonpurchase-money mortgage on Radford's farm. Radford defaulted and instituted bankruptcy proceedings. The Frazier-Lemke Act, which by its terms applied only retrospectively, permitted the debtor to purchase the property for less than its fair market value. The Court held the statute was void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" its enactment. 295 U.S., at 590, 55 S.Ct. at 863.

## **Argument**

The Debtor bought his home, lived there with his family, and claimed the property as his homestead. Per the Supreme Court in *United States v. Rodgers*, the Texas homestead estate is a vested property right for which just compensation or its equivalent must be paid.

Thus, the application of section 522(p), operates to deprive the Debtor of his homestead estate without just compensation, resulting in an unconstitutional taking without compensation under the Fifth Amendment Takings Clause.

Congress' power to make uniform bankruptcy laws is subject to the Fifth Amendment's prohibition against taking private property without compensation.  To the extent that section

522(p) applies to eviscerate Debtor's homestead rights, the statute performs, by operation of the Order, an unconstitutional taking without compensation. Under a *Penn Central* analysis, discussed *supra*, the significant factors to identify a "taking" are, 1) the economic impact of the regulation on the claimant, and particularly, the extent to which the regulation has interfered with distinct investment-backed expectations, and 2) the character of the governmental action. In this case, the economic impact on the Debtor is devastating.

The Order applying 522(p) deprives the Debtor of not only more than 80% of the value of his home, but also the home itself should a forced sale occur, with no compensation for his losses or that of his family. Furthermore, the character of the government action here is not one of public benefit, but rather one of private benefit - the redistribution of wealth among private parties, namely taking the Debtor's homestead and forcing the distribution of its proceeds to Debtor's only substantial creditor, Dome Entertainment Center, Inc. This obliteration of one of the most fundamental of property interests is not only a violation of the Texas Constitution and longstanding Texas property law, but it is also an unconstitutional taking under the Fifth Amendment.

Not only is the application of Section 522(p) of the Bankruptcy Code in this case an unconstitutional taking pursuant to the Fifth Amendment, it also appears to have a retroactive application in this case, having a severe impact upon interests acquired by the Debtor prior to the enactment of BAPCPA. Debtor's homestead was purchased arguably earlier, but no later than September 2, 2004. Section 522(p) was not effective until April 20, 2005. The Debtor could not then be charged with the knowledge his homestead interests could be impacted by section 522(p). Nor did the Debtor have a choice in when the petition was filed, as Dome instigated the involuntary proceeding.

17

Retroactive legislation is generally disfavored in the law.  Particularly concerning to courts are new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.  Homestead rights - whether or not the Debtor and his family will lose their home to a judgment creditor in contravention of the Texas Constitution - is one such matter in which predictability and stability are paramount.  The Supreme Court has previously held a bankruptcy statute void because it effected a taking of substantive rights in specific property acquired prior to its enactment.  See *Louisville Joint Stock v. Radford*, *supra*.  Debtor acquired his rights under the law well before section 522(p) was enacted.  As section 522(p) operates to take away Debtor's substantive homestead rights in specific property acquired prior to the section's enactment, 522(p) should likewise be held void.

Dome is a mere judgment creditor of Debtor.  In what was nothing more than a brazen attempt to circumvent Texas constitutional protections, Dome sought bankruptcy for the Debtor.  Dome's sole goal is to achieve through bankruptcy what it cannot achieve in any other court in the State of Texas – to enforce its judgment against the Debtor's protected homestead. The Texas Constitution's homestead provisions were specifically designed to prevent just this result – the forced sale of Debtor's home. The retroactive and unconstitutional effect of section 522(p) allows for just such an injustice.  Thus, for the reasons stated above, section 522(p) should be found unconstitutional under the Fifth Amendment Takings Clause.

## Conclusion

Section 522(p), by operation of the Order limiting Debtor's homestead exemption, effects an unconstitutional taking without compensation under the Fifth Amendment. Furthermore, section 522(p) applies retroactively, in this case effecting an unconstitutional

taking of vested property rights which existed prior to the enactment of section 522(p). Thus, section 522(p) of the Bankruptcy Code should be found to be void as unconstitutional under the Fifth Amendment Takings Clause.

## **Prayer**

The defendant prays that the Court reverse the Bankruptcy Court's Order sustaining Dome's Objection to Debtor's Claim of Exemptions and limiting Debtor's claim of exemptions to an interest not to exceed $136,875 and overruling Debtor's challenge to the constitutionality or applicability of 11 U.S.C. § 522(p) to this case with respect to the Property, and grant such other relief as is just.

Respectfully submitted,

By:   ___s/ Gerrit M. Pronske_____
           Gerrit M. Pronske
           State Bar No. 16351640
           Rakhee V. Patel
           State Bar No. 00797213
           Pronske & Patel, P.C.
           1700 Pacific Avenue, Suite 2260
           Dallas, Texas 75201
           Telephone: 214.658.6500
           Facsimile: 214.658.6509
           Email: grponske@pronskepatel.com
           Email: rpatel@pronskepatel.com

**COUNSEL FOR APPELLANT**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on March 6, 2009 I caused to be served the foregoing pleading upon the parties listed below via the Court's electronic transmission facilities and/or United States mail, first class delivery.

Howard M. Spector
Nathan M. Johnson
Howard Marc Spector, P.C.
12770 Coit Road
Banner Place, Suite 1100
Dallas, Texas 75251

Monica S. Blacker
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

           s/ Gerrit M. Pronske_____
           Gerrit M. Pronske