Cause No. 3:09-CV-100
ECF

---

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

---

ODES HO KIM,

*Appellant*,

v.

DOME ENTERTAINMENT CENTER, INC.,

*Appellee.*

---

Appeal from the United States Bankruptcy Court
For the Northern District of Texas, Dallas Division
Case No. 07-36293-HDH

---

**BRIEF FOR THE APPELLEE,
DOME ENTERTAINMENT CENTER, INC.**

---

HOWARD MARC SPECTOR, P.C.

 */s/ Nathan M. Johnson*
Howard Marc Spector
TBA # 00785023
Nathan M. Johnson
TBA # 00787779
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
(214) 237-3380 (fax)

ATTORNEYS FOR APPELLEE
DOME ENTERTAINMENT CENTER, INC.

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record for Appellee certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judge of this Court may evaluate possible disqualification or recusal.

**A. Parties**        **Appellant**: Odes Ho Kim
                      **Appellee:** Dome Entertainment Center, Inc.
                      **Interested Party**: Chong Ann Kim


**B. Attorneys**       **for Appellant**
                      Gerrit M. Pronske
                      Rakhee V. Patel
                      Pronske & Patel, P.C.
                      1700 Pacific Ave., Suite 2260
                      Dallas, Texas 75201
                      (214) 658-6500

                      **for Appellee**
                      Howard M. Spector
                      Nathan M. Johnson
                      HOWARD MARC SPECTOR, P.C.
                      12770 Coit Road
                      Banner Place, Suite 1100
                      Dallas, Texas 75251
                      (214) 365-5377

                      **for Interested Party**
                      Monica S. Blacker
                      Andrews Kurth LLP
                      1717 Main Street, Suite 3700
                      Dallas, Texas 75201
                      (214) 659-4576

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................2

TABLE OF CONTENTS............................................................................................3

TABLE OF AUTHORITIES .....................................................................................4

STATEMENT OF ISSUES ON APPEAL ..................................................................6

STATEMENT OF CASE ...........................................................................................7

STATEMENT OF RELEVANT FACTS ....................................................................8

SUMMARY OF ARGUMENT ..................................................................................9

ARGUMENT ..........................................................................................................10

CONCLUSION........................................................................................................19

PRAYER..................................................................................................................19

CERTIFICATE OF SERVICE .................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Armstrong v. United States,* 364 U.S. 40 (1960) ..........................................................................13

*Eastern Enter. V. Apfel,* 118 S. Ct. 2131 (1978)............................................................................13

*In re Bartlett*, 168 B.R. 488 (Bankr. D.N.H. 1994) ................................................................13, 18

*In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002) ...................................................................13, 16

*In re Lang,* 191 B.R. 268 (Bankr. D. Puerto Rico 1995).........................................................10, 14

*In re McDole (Keybank Nat'l Assoc. v. McDole),* 2008 U.S.
Dist. LEXIS 80531 (D. Wash. 2008) ................................................................................13, 14, 17

*In re Presto*, 376 B.R. 554 (Bankr. S.D. Tex. 2007) ....................................................................12

*In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008)......................................................13, 16, 17

*Landgraf v. USI Film Products, et al.*, *511 U.S. 244; 114 S.
Ct. 1483; 128 L. Ed. 2d 229 (1994)* .............................................................................................13

*McAndrews v. Fleet Bank,* 989 F.2d 13 (1993) ............................................................................18

*Owen v. Owen, 500 U.S. 305, 306, 111 S. Ct. 1833, 114 L.
Ed. 2d 350 (1991)* .........................................................................................................................14

*United States v. Security Industrial Bank et al.,* 459 U.S.
70; 103 S. Ct. 407; 74 L. Ed. 2d 235 (1982).....................................................................13, 15, 17

### Statutes

11 U.S.C. § 522(f)......................................................................................................................16, 17

11 U.S.C. § 522(p) ..................................................................................................6-10, 12-15, 18, 19

11 U.S.C. § 541.......................................................................................................9, 10, 12, 14,15

12 U.S.C. §§ 3331 *et seq.* (FIRREA) (1989) ......................................................................... 18-19

**Other Authorities**

Hon. William H. Brown, *Political and Ethical Considerations of Exemption Limitations: The "Opt-Out" as Child of the First and Parent of the Second* 71 AM BANKR. L.J. 149 (1997) ................................................................. 11

Lawrence Ponoroff, *Exemption Limitations: A Tale of Two Solutions*, 71 AM BANKR. L.J. 221 (1997) ..................................................................................... 11

Rivera, *State Homestead Exemptions And Their Effect On Federal Bankruptcy Laws,* REAL PROPERTY, PROBATE AND TRUST JOURNAL (Spring 2004) ..................................................................................... 11

**Other Materials**

United Report of the National Bankruptcy Review Commission, October 20, 1997 ................................................................................................... 11

## STATEMENT OF ISSUES ON APPEAL

1)      Whether the operation of 11 U.S.C. § 522(p) effects a taking of a debtor's property in violation of the Fifth Amendment of the United States Constitution.

2)      Whether, with respect to residential homestead property, 11 U.S.C. § 522(p) should be applied only to property purchased after the enactment of BAPCPA.

## STATEMENT OF CASE

Nature of the Case:      On December 21, 2007, Appellee Dome Entertainment Center, Inc. ("**Dome**") filed an involuntary bankruptcy petition against Odes Ho Kim ("**Appellant**" or the "**Debtor**") (Case No. 07-36293-HDH) (R.1:106-107)[1]. On May 9, 2008, the Bankruptcy Court entered an Order granting Debtor's Motion to Convert Case from Chapter 7 to Chapter 11. Debtor filed his schedules on or about June 10, 2008 (R.1:113). The section 341 Meeting of Creditors was held on June 16, 2008 (R.1:113). On or about June 18, 2008, Dome filed its *Objection to Debtor's Claim of Exemptions* (R.1:113). After a hearing the Bankruptcy Court entered an Order sustaining Dome's Objection to Debtor's Claim of Exemptions (R.1:258-259). On October 27, 2008, the Debtor filed a *Notice of Appeal* of the Bankruptcy Court's Order dated October 17, 2008 (R.1:1).

Trial Court:      Bankruptcy Court, Northern District of Texas, Dallas Division, the Honorable Harlin D. Hale presiding.

Trial Court's Disposition:      The Bankruptcy Court entered an *Order Regarding Debtor's Claims of Exemptions* (the "**Order**") limiting the Debtor's claim of exemption as to the real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038 (the "**Property**") to an interest in the Property not to exceed $136,875.00. The Order also overruled the Debtor's challenges to the constitutionality and applicability of 11 U.S.C. § 522(p) to this case with respect to the Property (R.1:258-259).

The record consists of one volume, plus one mini-volume to the judge. Volume one is cited as (R.1:Page).

---

[1] Due to an apparent clerical error, the record does not contain the first five entries on the bankruptcy court docket sheet. See R. 108-09. Dome will be filing a motion to amend the record. Attached for the Court's convenience is an accurate PACER printout of the bankruptcy court docket sheet, which includes the filing date of the involuntary petition.

## <u>STATEMENT OF RELEVANT FACTS</u>

Dome has a judgment against Kim for in excess of $6,000,000 (the "**Judgment**"). Since 2006, Dome's efforts to collect on the Judgment have been entirely fruitless, due in part to what Kim describes as an "asset protection scheme", whereby millions of dollars in Kim's assets have been and are held by various entities which are 100% owned and controlled by Kim and his wife.

While the litigation which resulted in the Judgment was pending, Kim, a Texas resident, purchased (using some $548,000 in funds wired from one of his entities (R.1:133)) a new house – the Property – for approximately $1.1 million (R.1:128-29). Kim closed on the purchase of the Property on September 2, 2004 –1205 days before the Petition Date (R.1:128-29). The Debtor testified that he did not purchase the property with proceeds from the sale of his previous residence (R.1:82-83). Kim sold his previous residence in September of 2005, more than one year after purchasing the Property (R.1:42).

Dome commenced this case by filing an involuntary bankruptcy petition against Kim on December 21, 2007 (R.1:106-07 – see footnote 1, *supra*).

## SUMMARY OF ARGUMENT

Section 522(p) of the Bankruptcy Code simply does not implicate the Fifth Amendment's Takings Clause. The purpose of the Takings Clause is "to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Bankruptcy Code section 522(p)'s limitation on a debtor's interest in residential real property imposes no public burden on the debtor, nor any public use for which the debtor's property is "taken".

Nor does section 522 effect an unconstitutional taking of a debtor's property. All of a debtor's interests in property are extinguished by Bankruptcy Code section 541(a), which transfers all such interests to the bankruptcy estate. A debtor acquires new property interests only by the grace of the Bankruptcy Code, in the form of exemptions under section 522. Section 522, therefore, awards property to the debtor. The BAPCPA addition of paragraph (p) to section 522 merely altered the definition of the exempt property awarded to a debtor under the Bankruptcy Code.

To the extent the Debtor argues that an individual has a constitutional right to purchase property with the expectation that, were he to file bankruptcy one day, the Bankruptcy Code will afford him the same exemptions with respect to that property as it would have had he filed for bankruptcy on the day of purchase, such argument has no basis in law or in equity.

Bankruptcy Code section 522(p) imposes no public burden upon a debtor, it takes no property away from a debtor, and it has no retroactive effect – even with respect to property purchased prior the effective date of the statute. It therefore does not violate the Takings Clause, nor does it even present a takings issue.

## ARGUMENT

I.    **SECTIONS 541(a) AND 522(p) OF THE UNITED STATES BANKRUPTCY CODE.**

    A.    *The filing of the involuntary petition created a bankruptcy estate, which included all of the Debtor's property.*

Dome's involuntary petition against the Debtor triggered section 541, title 11 of the United States Code (the "**Bankruptcy Code**" or simply the "**Code**"). 11 U.S.C. § 541(a) ("the commencement of a case under section 301, 302, or 303 of this title creates an estate.") The estate comprises all property set forth in 11 U.S.C. §§ 541(a)(1) – (a)(7), which includes, *inter alia*, all the debtor's separate property and all sole and joint managed community property. 11 U.S.C. 541(a)(1), (a)(2). *In re Lang*, 191 B.R. 268, 271 (Bankr. D. Puerto Rico 1995).

    B.    *Once the estate is created, the Bankruptcy Code, not state law, defines the scope of a debtor's exemptions.*

At the moment of filing, therefore, a debtor has no interest in property, including property otherwise subject to state law exemptions. This is because section 541(a) operates to transfer property to the estate without regard to the effect of state law exemption statutes. A debtor acquires an interest in exempt property only by grace of the Bankruptcy Code, and only upon his election to invoke the exemptions provided under section 522 of the Bankruptcy Code. *See Shirkey v. Leake*, 715 F.2d 859, 864 (4th Cir. 1983).

As explained by the Fourth Circuit in *Shirkey*,

> "The 'line of cleavage' that separates exempt from non-exempt property no longer drawn at the inception of the case but instead at a time much later in the bankruptcy proceedings. . . . That is, exempt property becomes property of the estate on the petition date, and regains its exempt status only upon the debtor's act of invoking exemptions pursuant to 11 U.S.C. § 522.

*Id.*

That is, a debtor does not enter a bankruptcy case with a set of exemptions subject to

which and around which the Bankruptcy Code must operate; rather, Congress has defined the exemptions to which a debtor is entitled through 11 U.S.C. § 522, and it is the Bankruptcy Code itself which provides a Debtor with exemptions, either by reference to state law or otherwise.[2]

Conventionally, bankruptcy practitioners refer to exemptions using the shorthand of either "federal law" or "state law" exemption elections. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), this was sufficient to convey the idea that a debtor may elect between two separate exemption schemes because (again, prior to BAPCPA) Congress had chosen to give debtors (in non-opt-out states) the choice between importing the exemptions available under state law virtually *in toto* into their bankruptcy case, or selecting the alternate (*i.e.*, federal) exemption set. Before BAPCPA, if a debtor opted to import the state exemptions into his bankruptcy, Congress' decision to allow that

---

[2] Congress in fact could have specified a set of exemptions completely independent of state law, or it could have provided no exemptions at all. This is borne out historically. The Bankruptcy Acts of 1800 and 1841 provided federal exemptions for debtors but did not recognize state exemptions. *See* Rivera, *State Homestead Exemptions And Their Effect On Federal Bankruptcy Laws,* REAL PROPERTY, PROBATE AND TRUST JOURNAL (Spring 2004) at fn. 162-166. Because a fresh start in bankruptcy is a matter of federal, not state concern, in the years leading up to the enactment of BAPCPA, many authorities argued that BAPCPA should adopt a uniform set of federal exemptions, without reference to state law. *See, e.g.*, Lawrence Ponoroff, *Exemption Limitations: A Tale of Two Solutions*, 71 AM BANKR. L.J. 221 (1997); Hon. William H. Brown, *Political and Ethical Considerations of Exemption Limitations: The "Opt-Out" as Child of the First and Parent of the Second*, 71 AM BANKR. L.J. 149 (1997). Indeed, the *Report of the National Bankruptcy Review Commission, October 20, 1997,* recommended the elimination of state law property exemptions in favor a uniform set of federal exemptions. It is telling that none of the Commission's participants expressed concern over a potential violation of the Takings Clause. The Report states:

Chapter 1: Consumer Bankruptcy - Property Exemptions

1.2.1   Elimination of Opt Out

A consumer debtor who has filed a petition for relief under the Bankruptcy Code should be allowed to exempt property as provided in section 522 of the Code. Subsection (b)(1) and (2) of section 522 should be repealed.

1.2.2   Homestead Property

The debtor should be able to exempt the debtor's aggregate interest as a fee owner, a joint tenant, or a tenant by the entirety, in real property or personal property that the debtor or a dependent of the debtor uses as a residence in the amount determined by the laws of the state in which the debtor resides, but not less than $20,000 and not more than $100,000. Subsection (m) of section 522 should be revised to reflect that all exemptions except for the homestead exemption shall apply separately to each debtor in a joint case.

option meant that there were few, if any, differences between property which could be reached by creditors under state law collection methods and property which would be available for distribution by a bankruptcy trustee.

BAPCPA marked a sea change with respect to the incorporation of state exemption laws into the Bankruptcy Code. No longer do the "Texas exemptions", or those of other states, operate unaffected within the Bankruptcy Code. Now, the Bankruptcy Code provides a new choice – a debtor residing in Texas can still elect the "federal" exemptions provided in 11 U.S.C. § 522(d), or he can elect the "Texas" exemptions as modified by 11 U.S.C. § 522. This is made clear in 11 U.S.C. § 522(b)(3), which begins with the qualification that all state exemptions recognized by the Bankruptcy Code are "*subject to the limitations of subsections (o) and (p)* [emphasis added]". 11 U.S.C. § 522(b)(3)(A).

The effect of this statutory scheme is clear:  Bankruptcy Code Section 541 extinguishes the property rights of a debtor by transferring them to the estate. Bankruptcy Code Section 522, in contrast, *awards* property to a debtor. By its terms, section 522(p) provides a limited exemption to a debtor in the form of *an interest* in the state law homestead exemption he held prior to the petition date. *See In re Presto*, 376 B.R. 554, 600-01 (Bankr. S.D. Tex. 2007). Section 522(p) does not *subtract* from the value of a debtor's exemption with respect to a homestead; rather, it defines a new, bankruptcy law exemption by modified reference to state law, and monetizes it (to $136,875).

## II.   SECTION 522(p) AND THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT.

### A.   *Section 522(p) does not impose a public burden on select individuals.*

While there are many cases involving section 522 and the Takings Clause of the Fifth Amendment, not one of them involves section 522(p). More significantly, not one of them

involves an alleged "taking" of property from a debtor pursuant to **any** subparagraph of section

522. Instead, all of the cases addressing section 522 in light of the Takings Clause concern

whether certain changes to section 522 (or, in earlier cases, the enactment of section 522 as part

of the 1978 Bankruptcy Code), which grant a debtor some additional right or exemption, effect

an unconstitutional taking with respect to the interests of the debtor's *creditors*.[3] Why?

At a threshold level, Bankruptcy Code section 522(p) is simply not the type of law that

would implicate the Takings Clause. The purpose of the Takings Clause is "to prevent the

government "from forcing some people alone to bear public burdens which, in all fairness and

justice, should be borne by the public as a whole." *Eastern Enter. v. Apfel, 118 S. Ct. 2131, 2146*

*(1978) (*quoting *Armstrong v. United States, 364 U.S. 40, 49 (1960). See also Landgraf v. USI*

*Film Products, 511 U.S. 244, 266, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)* (the Takings Clause

prohibits government actors from taking private persons' vested property rights without "just

compensation" and for a "public use"); Julia Patterson Forrester, *Bankruptcy Takings*, 51 FLA. L.

REV. 851 (December 1999). Bankruptcy Code section 522(p)'s limitation on a debtor's interest

in homestead property imposes no public burden on the debtor, nor any public use for which the

debtor's property is "taken". Instead, section 522(p) entails the rendering of the debtor's property

available to satisfy the debtor's debts. Such action is a fundamental underlying principle of the

bankruptcy process, and has never been considered a taking.

In addition, whereas the creditor cases referenced above (and discussed further below)

concern the potential "taking" effect of section 522 with respect to the lien rights of creditors,

---

[3] *See, e.g., In re McDole (Keybank Nat'l Assoc. v. McDole)*, 2008 U.S. Dist. LEXIS 80531 (D. Wash. 2008); *In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008); *In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002); *In re Bartlett*, 168 B.R. 488 (Bankr. D.N.H. 1994); *United States v. Security Industrial Bank et al.*, 459 U.S. 70; 103 S. Ct. 407; 74 L. Ed. 2d 235 (1982). *See also Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S. Ct. 854, 79 L. Ed. 1593 (1935) (finding Frazier-Lemke Act violated Takings Clause because the rights it conferred upon mortgagors destroyed property rights of mortgagees).

section 522(p) cannot effect a taking, because all of a *debtor's* interests in property have already been taken away by section 541(a) before section 522(p) comes into play. Section 522(p) takes nothing away, but instead awards the debtor new property rights. A takings analysis is, therefore, inapplicable.

**B.      *The reduction of the vale of a homestead right is not a taking.***

Retroactive application of modifications to existing exemptions laws have generally been upheld where the effect on the property right (again, all these cases involve the property rights of creditors, not of debtors) is merely a reduction rather than a destruction of the value of the existing right. *See, e.g., In re McDole (Keybank Nat'l Assoc. v. McDole)*, 2008 U.S. Dist. LEXIS 80531 (D. Wash. 2008) (retroactive application of increased homestead exemption did not constitute a taking, because change in exemption merely reduced and did not nullify mortgage lien). By analogy, a reduction to the value of an exemption, which yet preserves some value in the exemption (specifically, the current amount of $136,875), likewise does not constitute a taking.

**C.      *Texas homestead law does not trump the Bankruptcy Code exemptions provisions.***

Through his takings arguments, the Debtor seeks to elevate Texas homestead law above the Bankruptcy Code. In so doing he ignores the law of federal preemption. Whereas property rights are defined by state law, bankruptcy exemptions are defined by federal bankruptcy law. To the extent the two may conflict, the latter preempts the former. *See, e.g., In re McDole*, 2008 U.S. Dist. LEXIS 80531 (D. Wash. 2008) ("although states are free to define their exemptions, conflicting state exemption limitations may not stand.") (citing *Owen v. Owen, 500 U.S. 305, 306, 111 S. Ct. 1833, 114 L. Ed. 2d 350 (1991)); In re Lang, 191 B.R. 268, 271 (Bankr. D. Puerto Rico 1995)* (where state law provided that community property could not be sold without

written consent of both spouses, the statute was in conflict with federal bankruptcy law and was preempted). Texas homestead law does not preempt section 522(p), and a tortuous trip through a Fifth Amendment takings analysis should not be undertaken to change that relationship.

### D.      *Section 522(p) has no retroactive effect.*

Many takings cases concern the retroactive application of a statute, under the principle that the law should not upset legitimate expectations regarding property rights. *See, e.g., United States v. Security Industrial Bank et al., 459 U.S. 70, 81; 103 S. Ct. 407, 414; 74 L. Ed. 2d 235 (1982).*[4] The Debtor argues that application of 522(p) would be retroactive in his case, because 522(p) limits his post-petition interest in the Property and he bought the Property prior to the effective date of section 522(p). This assertion misses the fact that section 541(a), not 522(p), divested the Debtor of his rights in the Property, and section 541(a) existed in 2004 (when the Property was purchased) as it exists today. The Debtor purchased the property subject to the effects of federal bankruptcy law, and the operation of section 541 to transfer the Property to his bankruptcy estate was the same on the Petition Date as it was on the date he purchased the Property.

### E.      *A purchaser of real property has no right to freeze the exemption status of the property with respect to a hypothetical future bankruptcy filing.*

To the extent the Debtor argues that an individual has a constitutional right to purchase property with the expectation that, were he to file bankruptcy one day, the Bankruptcy Code will afford him the same exemptions with respect to that property as it would have had he filed for bankruptcy on the day of purchase, such argument has no basis in law or in equity. As a matter of federal bankruptcy law, section 522(p) defines an exemption that does not exist until the moment of the bankruptcy filing. (Theoretically, section 522(p) could effect a retroactive taking

---

[4] It does not appear that Appellant submits the argument of disfavored retroactivity as an independent basis for invalidating section 522(p), but rather as a factor to be considered in the takings analysis.

*only* if it were applied to the property of a debtor whose petition date precedes the effective date of the statute.)

Under the Debtor's retroactivity argument, the purchase of a homestead property would freeze in time the applicable bankruptcy exemptions which would apply were the purchaser to file bankruptcy immediately after the purchase. This reasoning runs counter to the analogous reasoning in several cases concerning takings under section 522(f). A series of such cases involve legislative increases in state law homestead exemption limits, and the effect of such increases on creditors who hold non-purchase money liens on the property which pre-date the relevant legislation. Creditors in those cases argued that the legislature's act of increasing the exemption limits retroactively diminished the value of their pre-existing liens. The courts have uniformly rejected this argument. Common among many of these cases is the rationale that the lienholders took their liens subject to the state legislature's power to alter exemption limits – and hence the value of the lien – at any time. *See, e.g., In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008) ("What the Legislature gave to holders of judgment liens, the Legislature may take away prior to sale or other satisfaction of the judgment lien."); *In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002) (lienholder knew or should have known that … *§ 522(f)* might impact upon [*sic*] his lien and that the underlying state court exemptions might be adjusted depending upon the date of the filing of the bankruptcy case.)

The *Betz* court explained that the subsequent reduction of the value of the creditors' lien

> "is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors." *Leicht, 222 B.R. at 683-84* (quoting *Hanover Nat'l Bank. v. Moyses, 186 U.S. 181, 189, 46 L. Ed. 1113, 22 S. Ct. 857 (1902)*). Accordingly, [the creditor'] property rights under the [Takings Clause of the] *Fifth Amendment* are not infringed upon by application of the increased homestead amount.

273 B.R. at 326-27.

The same reasoning applies here: the purchaser of residential real property takes and enjoys a homestead exemption subject to applicable bankruptcy law, and Congress may alter federal bankruptcy law at any time.

**F.    *An example of a legitimate takings analysis.***

Unlike this case, retroactive application of federal bankruptcy exemption laws was relevant to the analysis in *Security Industrial, 459 U.S. 70.* That case concerned the inclusion in the 1978 Bankruptcy Code of section 522(f)(2), which permits debtors to avoid non-possessory, non-purchase money liens on various types of exempt personalty. At issue was whether section 522(f)(2) could be applied to liens on the debtor's personalty which creditors had perfected prior to the effective date of the Code. The Court declined to squarely resolve the question of whether such application would constitute an unconstitutional taking, and instead observed that retroactive application of the provision would raise "substantial enough constitutional doubts..."

> No bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress. In light of this principle, the legislative history of the 1978 Act suggests that Congress may not have intended that *§ 522(f)* operate to destroy pre-enactment property rights."

*Id. at 74. See also* Forrester, 51 FLA. L. REV. at 869-870.

As with *McDole, Trudell,* and *Betz* (all previously discussed herein), the essential distinction between *Security Industrial* and the present case is the difference between the property interests of creditors – which may be adversely affected by section 522, and debtors – whose interests in property are only increased by section 522. Whereas retroactive application of section 522(f)(2) to liens which pre-dated the Bankruptcy Code may have affected a pre-petition

property rights of the lienholders, 522(p) does not affect a property right (as already discussed herein).

###### G.      Application of section 522(p) in this case is prospective, not retroactive.

The discussion in *McAndrews v. Fleet Bank, 989 F.2d 13 (1ˢᵗ Cir. 1993)*, helps to clarify the why application of section 522(p) in this case is not retroactive with respect to the purchase of the Debtor's Property, notwithstanding the fact that the Debtor's purchase of the Property pre-dates BAPCPA.

> The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date. Hence, a statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date. See *Cox v. Hart, 260 U.S. 427, 434-35, 43 S. Ct. 154, 156-57, 67 L. Ed. 332 (1922)*; *EPA v. New Orleans Pub. Serv., Inc., 826 F.2d 361, 365 (5th Cir. 1987)*; see also *Allied Corp. v. Acme Solvents Reclaiming, Inc., 691 F. Supp. 1100, 1110 (N.D. Ill. 1988)*; *King v. Mordowanec, 46 F.R.D. 474, 482 (D.R.I. 1969)*. Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one.
>
> * * *
>
> This means, of course, that a statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle. The key lies in how the law interacts with the facts. So long as a neoteric law determines status solely for the purpose of future matters, its application is deemed prospective. See *New Orleans Pub. Serv., 826 F.2d at 365.*

989 F.2d at 16 (quoted in *In re Bartlett*, 168 B.R. 488, 495 (Bankr. D.N.H. 1994)).

In short, determination of whether application of a statute is prospective or retroactive turns on the date of the conduct that triggers the application of the statute. In the *McAndrews* case, the court fond that application of FIRREA to a lease which pre-dated the enactment of FIRREA was not retroactive. The effective date the lease was not the triggering event; rather, conduct  by the landlord and the insolvency of the tenant (among other circumstances)

subsequent to FIRREA's enactment triggered FIRREA. *Id.* In the case now before this Court, the event triggering application of 522(p) was the filing of the bankruptcy petition, not the purchase of the Property. This is because State exemption rights are determinable as of the time of the filing of the bankruptcy petition. *See In re John Taylor Co., 935 F.2d 75 (5th Cir. 1991); 11 U.S.C. § 522(b)(3)(A) (1994) and 11 U.S.C. § 522(b)(3)(A) (2005)*. Accordingly, application of section 522(p) is prospective.

## CONCLUSION

In summary, Bankruptcy Code section 522(p) imposes no public burden upon a debtor, it takes no property away from a debtor, and it has no retroactive effect – even with respect to property purchased prior the effective date. It therefore does not violate the Takings Clause, nor does it even present a takings issue.

## PRAYER

Appellee prays that the Court sustain the Bankruptcy Court's Order limiting the Debtor's interest in the Property to a monetary interest not to exceed $136,875, and reject Appellant's challenges to the constitutionality of Bankruptcy Code section 522(p).

Respectfully submitted,

HOWARD MARC SPECTOR, P.C.

_/s/ Nathan M. Johnson___
Howard Marc Spector
TBA # 00785023
Nathan M. Johnson
TBA # 00787779
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
(214) 237-3380 (fax)

ATTORNEYS FOR DOME ENTERTAINMENT CENTER, INC.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading was served via electronic means to all parties who receive ECF notice in this case on April 2, 2009.


        */s/  Nathan M. Johnson*
        Nathan M. Johnson

CONVERTED, APPEAL, REFORM, EXHIBITS

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
## Bankruptcy Petition #: 07-36293-hdh11

*Assigned to:* Harlin DeWayne Hale
Chapter 11
Previous chapter 7
Involuntary
Asset

*Date filed:* 12/21/2007
*Date converted:* 05/09/2008

*Debtor*
**Odes Ho Kim**
2013 Cottonwood Valley Circle
Irving, TX 75038
SSN / ITIN: xxx-xx-8437

represented by **Christina Walton Stephenson**
Pronske & Patel, P.C.
1700 Pacific Ave., Ste. 2260
Dallas, TX 75201
(214) 658-6506
Fax : (214) 658-6509
Email:
cstephenson@pronskepatel.com

**Gerrit M. Pronske**
Pronske & Patel, P.C.
1700 Pacific Avenue
Suite 2260
Dallas, TX 75201
(214) 658-6500
Fax : 214-658-6509
Email:
gpronske@pronskepatel.com

**Mark Edward Andrews**
Cox Smith Matthews
Incorporated
1201 Elm Street, Suite 3300
Dallas, TX 75270
(214)698-7800
Fax : (214)698-7899
Email:
mandrews@coxsmith.com
*TERMINATED: 05/27/2008*

**Rakhee V. Patel**

Pronske & Patel, P.C.
1700 Pacific Avenue
Suite 2260
Dallas, TX 75201
214-658-6500
Fax : 214-658-6509
Email: rpatel@pronskepatel.com

**Zachery Z Annable**
Cox Smith Matthews Inc.
1201 Elm Street, Suite 3300
Dallas, TX 75270
(214)698-7823
Fax : (214)698-7899
Email: zannable@coxsmith.com

*Trustee*
**Daniel J. Sherman**
509 N. Montclair
Dallas, TX 75208
(214)942-5502
*TERMINATED: 04/23/2008*

*Trustee*
**James Cunningham**
Jim Cunningham & Associates, Inc.
6412 Sondra Dr.
Dallas, TX 75214
214-827-9112
*TERMINATED: 05/09/2008*

*U.S. Trustee*
**UST U.S. Trustee**
1100 Commerce Street
Room 976
Dallas, TX 75242-1496
(214) 767-8967

| Filing Date | Docket Text |
|---|---|
| 12/21/2007 | 1 Chapter 7 involuntary petition. Fee Amount $299 Re: Odes Ho Kim Filed by Dome Entertainment Center, Inc. (attorney William S. Brunsten) (Johnson, Nathan) |
| 12/21/2007 | Receipt of filing fee for Involuntary petition (chapter 7)(07-36293-7) \|misc,invol7\| ( 299.00). Receipt number 7961113, amount $ 299.00. (U.S. Treasury) |

| | |
|---|---|
| 12/21/2007 | 2 Motion to appear pro hac vice for William S. Brunsten. Fee Amount $25 Filed by Petitioning Creditor Dome Entertainment Center, Inc. (Johnson, Nathan) |
| 12/21/2007 | Receipt of filing fee for Motion to Appear pro hac vice(07-36293-7) [motion,mprohac] ( 25.00). Receipt number 7961125, amount $ 25.00. (U.S. Treasury) |
| 12/28/2007 | 5 Order granting motion to appear pro hac vice for William S. Brunsten to represent Petitioning Creditor Dome Entertainment Center, Inc (related document # 2 ) Entered on 12/28/2007. (Moroles, D.) |
| 12/28/2007 | 6 Notice *of Amended Involuntary Petition* filed by Petitioning Creditor Dome Entertainment Center, Inc. (RE: related document(s) 1 Chapter 7 involuntary petition. Fee Amount $299 Re: Odes Ho Kim Filed by Dome Entertainment Center, Inc. (attorney William S. Brunsten) (Johnson, Nathan)). (Johnson, Nathan) |
| 12/28/2007 | 7 Involuntary summons issued on Odes Ho Kim . (RE: related document(s) 1 Chapter 7 involuntary petition. Fee Amount $299 Re: Odes Ho Kim Filed by Dome Entertainment Center, Inc. (attorney William S. Brunsten) (Johnson, Nathan)) Answer due by 1/17/2008. (Edmond, Michael) |
| 12/28/2007 | 8 Standing scheduling order regarding involuntary cases Entered on 12/28/2007. Status Conference to be held on 1/29/2008 at 01:30 PM at Dallas Judge Hale Ctrm. (Edmond, Michael) |
| 12/30/2007 | 9 BNC certificate of mailing - PDF document. (RE: related document(s) 5 Order granting motion to appear pro hac vice for William S. Brunsten to represent Petitioning Creditor Dome Entertainment Center, Inc (related document # 2 ) Entered on 12/28/2007. (Moroles, D.)) No. of Notices: 2. Service Date 12/30/2007. (Admin.) |
| 01/03/2008 | 10 Summons service executed in an involuntary case on Odes Ho Kim 12/28/2007, Answer Due 01/17/2008 filed by Petitioning Creditor Dome Entertainment Center, Inc., Alleged Debtor Odes Ho Kim. (Johnson, Nathan) |
| 01/04/2008 | 11 Notice of hearing. *status conference* filed by Petitioning Creditor Dome Entertainment Center, Inc. (RE: related document(s) 1 Chapter 7 involuntary petition. Fee Amount $299 Re: Odes Ho Kim Filed by Dome Entertainment Center, Inc. (attorney William S. Brunsten) (Johnson, Nathan), 8 Standing scheduling order regarding involuntary cases Entered on 12/28/2007. Status Conference to be held on 1/29/2008 at 01:30 PM at Dallas Judge Hale Ctrm. (Edmond, Michael), 10 Summons service executed in an involuntary case on Odes Ho Kim 12/28/2007, Answer Due 01/17/2008 filed by Petitioning Creditor Dome Entertainment Center, Inc., Alleged Debtor Odes Ho Kim. (Johnson, Nathan)). Status Conference to be held on 1/29/2008 at 01:30 PM at Dallas Judge Hale Ctrm. (Johnson, Nathan) |
| | 12 Answer to involuntary petition filed by Alleged Debtor Odes Ho Kim. (Annable, |